## SCHERPF *a.* SZADECZKY.

*New York Common Pleas* ; *General Term, March,* 1855.

EVIDENCE.—PROOF OF MARRIAGE.—EXAMINATION OF REPUTED WIFE.

In an action for enticing away a man's wife, actual proof of the marriage is not necessary. Cohabitation, reputation, and the admission of the parties, is sufficient.

And certainly the admission of the defendant that the plaintiff and his alleged wife were married, is sufficient, without formal proof of marriage.

Where the marriage is denied, and the plaintiff has given sufficient evidence to establish it *prima facie,* the defendant cannot examine the wife to disprove the marriage.

A verdict against defendant in an action for enticing away plaintiff's wife, will not be set aside as excessive, unless facts appear which show that the jury were actuated by improper motives.

And the court will not infer this, merely from the amount of the damages awarded.

Appeal from an order denying a new trial.

This was an action for enticing away the plaintiff's wife.

The answer denied the enticing charged, and also averred on information and belief, that the plaintiff and Catharine Scherpf, referred to in the complaint as his wife, were never legally married.

In the course of the trial, before Woodruff, J., May 9, 1851, evidence was put in by plaintiff, tending to show that the plaintiff and Catharine Scherpf had for several years lived together as man and wife, were reputed to be such, and had frequently admitted that they stood in that relation to each other. It was also in evidence that the defendant had often spoken of Catharine Scherpf, as "Mrs. Scherpf," and had in conversation distinctly admitted that she was married to the plaintiff.

The defendant moved for a dismissal of the complaint, on the ground that no actual marriage between the plaintiff and his alleged wife, had been proved. The motion was denied by the court, and defendant excepted.

The defendant afterwards offered to prove by the testimony of Catharine Coombs, otherwise called Catharine Scherpf, the

Scherpf a. Szadeczky.

alleged wife of plaintiff, that there had never been a legal marriage between her and the plaintiff. To this the plaintiff's counsel objected, on the ground that she appeared to be the wife of plaintiff, and could not be called to testify against her husband.

The court held that as there was in the case *prima facie* evidence of a marriage, the witness could not be examined; and defendant's counsel excepted.

The jury having found for the plaintiff, damages $10,000—being the amount claimed in the complaint, the defendant moved at special term for a new trial, on the grounds above stated, and also on the ground that the damages awarded, were excessive.

The motion was denied, and the defendant appealed to the general term.

So much of the opinion of the court at special term as relates to the questions of evidence which were argued upon the appeal, is as follows:—

WOODRUFF, J.—I have carefully reconsidered the arguments presented upon the motion for a nonsuit, urged on the trial, upon this ground, and more fully discussed upon this motion, and I still entertain the views expressed on the trial.

It is admitted that the general rule on this subject is, that evidence of cohabitation, reputation, and acknowledgment by the parties, a holding of themselves out to the world as husband and wife, is a sufficient proof of the fact of marriage.

But it is claimed, that as this rule is subject to exceptions, viz: that on an indictment for bigamy, the alleged first marriage must be established by proof of actual marriage, and that in actions for *crim. con.*, the same proof is necessary, so, upon similar principles, the same proof should be required in this case. The exceptions to the general rule have heretofore been said to be confined to the two cases above mentioned; but the Supreme Court in Clayton *v.* Wardell, (5 *Barb.* 214), held that upon an issue as to the legitimacy of a child, when the actual marriage of its parents was proved, nothing less than evidence of a prior actual marriage of the father should be permitted to establish the illegality of the second.

I fully appreciate the propriety of requiring on the trial of an individual for an alleged crime, the highest evidence which the nature of the case will permit. Not only the presumptions in favor of a man's innocence, but the cautious jealousy with which the law protects the liberty of the citizen, may well forbid a conviction of a crime upon mere presumptions from circumstances, which, though true, are not inconsistent with innocence of the offence charged, when higher evidence may presumptively be given. And it may be, that the charge upon which it is sought to bastardize the issue of an actual marriage, ought to rest upon the same evidence; not only because the charge imputes to the father the crime of bigamy, but also because the consequences of sustaining this charge are of so grave a character, affecting the issue, and more serious than the loss of property, that such presumptions ought not to be entertained. At all events, I do not deem it necessary for the purposes of this case, to question the correctness of the decision of the Supreme Court.

But I am not aware that in any case in which the action proceeds merely upon the ground of making compensation for an injury either to a wife, or to a husband through the wife, or for the loss of a wife's services, any such exception was ever made; nor do I perceive the propriety of such an exception. The trial does not peril the liberty or the life of the defendant. It puts at hazard no question so serious as legitimacy, affecting not merely the inheritance, but the position in society of the issue for life, and it may also be, prejudicing their issue after them.

But it was ingeniously argued that the present action imputes crime as truly as an indictment for bigamy, since enticing away a man's wife, was punishable by fine and imprisonment so early as 3d Edward I.; and that therefore the presumption of innocence should prevail over, or at least should countervail, a presumption of marriage, founded on circumstances only; and counsel urge that the rule in actions of *crim. con.*, by which proof of actual marriage is required, supports this view.

I apprehend that this is an erroneous view of the rule. It is not true that when the facts necessary to support the civil action, are of a criminal nature, that the exception arises; nor

Scherpf *a.* Szadeczky.

is the exception placed upon any such grounds. If it were, then in an action by the husband for the loss of service, by reason of an assault and battery of the wife, or in trespass by husband and wife for the personal injury of the wife, and especially if the assault were with intent to kill, the same necessity of proving actual marriage, would exist; for in each of these cases the plaintiff, to sustain the action, proves in fact the commission of an offence which may be the subject of indictment and punishment by fine and imprisonment.

The ground of the exception where it arises, is, that the action itself if penal :—*e. g.*, in indictments for bigamy ; the proceeding involves the liberty of the subject,—the object is punishment—and no one shall be subjected to punishment, but upon the best evidence the nature of the case will allow.

The exception in actions of *crim. con.*, did not, I think, originate in the idea that the presumption of innocence is at least equal to a presumption founded in any circumstances short of actual marriage, but upon the very distinction which I have suggested.

The first reported case in which the exception in such an action was recognized, so far as I have been able to discover, was Morris *v.* Miller, (4 *Burr*, 2057), and that case has been ever since followed. In that case, Lord Mansfield does not place the rule that an actual marriage must be proved, on the ground that the facts alleged impute crime, but upon the distinct ground that " this is a sort of *criminal action ;* " that, " there is no other way of punishing this *crime* at the common law."

The action itself is therefore peculiar, and the exception is stated in that case, to apply to no other action which is in form civil. And in Birt *v.* Barlow, (*Douglas*, 171), Lord Mansfield expressly places the exception upon this ground. He says, " An action for *crim. con.*, has a mixture of penal prosecution, and such an action is the only civil case where it is necessary to prove an actual marriage."

I might suggest reasons of public policy—reasons founded in the great inconvenience, and oftentimes the impossibility of furnishing proof of actual marriage at a period in which migration is so prominent a characteristic of the age, and

24

especially in a State where the law recognizes the validity of a marriage resting in contract between the parties unattended with any forms, ceremonies, or solemnities, and where registration in any form is not required, which to my mind, forbid the extension of the rule requiring such proof to new cases, and I am by no means inclined so to extend it in favor of one who voluntarily invades his neighbor's household, to seduce an acknowledged wife from her allegiance, and by such extension, to deliver him from his liability to make the husband just compensation.

The defendant insists that the judge erred on the trial, in excluding the alleged wife, when offered by the defendant as a witness to prove that she was not in fact the wife of the plaintiff.

The rule that a wife is not competent to testify against her husband, is not questioned; but it is urged that when the question whether the proposed witness is a wife or not, is the very question upon which the jury are to pass, she is competent. In other words, that the court cannot say she is the wife, and so exclude her; because that is deciding in advance the very question of fact which should be left to the jury.

A plausible answer to the defendant's argument, though perhaps liable to similar, yet to no greater criticism, may be stated thus:—If the proofs without her testimony, do establish the marriage, then the jury will so find, and the witness was in fact, incompetent. But if the plaintiff's proofs do not establish the marriage, then the jury will so find, and the defendant must have a verdict. So that to allow her to testify, is to assume that no marriage is proved, and if that be assumed by the court, then the plaintiff should be nonsuited, and no evidence from the defendant was necessary; while to exclude her testimony, is only to say that the court deem a marriage is *prima facie* established. If the jury should so find, then the exclusion is clearly proper; if the jury do not so find, then the exclusion works no prejudice, since the defendant has a verdict.

The true ground for rejecting her testimony, however, is not involved in either of these syllogistic processes of reasoning. These counter propositions may, however, be useful to a true

understanding of the rule. They both proceed upon the idea that the court may indulge in an assumption on the subject, although the assumption that she is a wife, would perhaps be shown to be false, if the witness were permitted to explain her seeming incompetency, and the assumption that she is not a wife, might be shown to be false by the verdict.

The defendant has no right to call upon the court to receive an offer which places them in such a position, or exposes their ruling to any such absurdity in its results. It is rather to be said that when the competency of the witness depends upon the very fact in issue, the witness is never competent. That competency is in doubt by the very state of the case, and there is no mode of removing the doubt but by the verdict. The embarrassment or hardship, if any, results from the very nature of the case, and the party who offers the witness, must bear the consequences of a difficulty that cannot be overcome.

In the present case, the plaintiff had shown not only cohabitation, general reputation, the holding out of each other by the parties to their friends and neighbors and the world, as husband and wife, the adoption by the alleged wife of the husband's name, and this during a long series of years, but had also shown repeated admissions by the defendant himself that they were husband and wife. I cannot doubt that this was sufficient to exclude her testimony.

It is no unusual thing that the court are required, in the progress of a trial, in ruling upon the admissibility of evidence, to infer, and say that facts are proved,—as, for example, that a witness offered is interested, or that a paper is lost, or that the execution of an instrument is established,—and yet these inferences may and often do involve the very questions upon which the jury are to pass. In such cases, the ruling by a court is in a sense provisional only; it is founded upon what the court deem *prima facie* proof. It is the defendant, in a case like the present, who calls upon the court to make an assumption, and that in the face of such *prima facie* proof. He offers the witness.

The law upon the proofs already given, declares the alleged wife *prima facie* incompetent, and the defendant now asks the court to assume that she is not the wife, and so to receive her.

I apprehend he has no right, as a matter of law, to require the court to make any assumption but just the inference from the case as it then stands. So long as any rules touching the admissibility of evidence exist, they can only be administered by requiring the court to pass upon just such questions as these without any merely hypothetical assumptions, and to dispose of them upon the evidence appearing in the case, at the time when the testimony is offered.

The cases chiefly relied upon by the defendant's counsel were settlement cases, in which the alleged husband was not a party to the suit, nor interested in the event.

There are some cases in which the alleged wife was deemed incompetent to testify for her reputed husband, after long cohabitation and other acts creating a presumption of marriage, but these do not reach the present question. Nor do I find any case which conflicts with the above views, except that Peat's case (*Lew. Cr. Cas.*, 288), and Wakefield's case (*Ib.*, 279), are said to sanction an examination of a reputed wife on her *voir dire*, to prove the invalidity of the marriage. I am not able to perceive the propriety of such an examination, when the question of marriage is the very question for the jury.

The argument in its favor amounts to this : if she will swear she is not the plaintiff's wife, then she is competent to do so.

This is simply absurd, for she is offered for that very purpose ; the offer of her testimony assumes that she will give it, if permitted. There is no occasion for an .examination on her own *voir dire ;* if, when sworn, she does not give evidence that she is not married, the offer and the evidence amount to nothing ; and to say that, if she will give evidence that she is not married, she is therefore competent, is to beg the whole question.

I am still of opinion that the ruling on the trial was correct on this point.

*J. Cochrane*, for appellant. I. The offence of persuading away a person's wife was made indictable in England, by statute, 3 *Edw. I. ch.* 13. (*See* 3 *Black. Comm.*, 139). The statute law of England became, at the revolution, our law ; (*Const. of* 1777, *sec.* 35, *Const. of* 1846, *art.* 1, *sec.* 17). There-

fore the rule which prevails in indictments for bigamy, &c., that actual marriage should be proved, applies in the present case; the reason of the rule being that proof of actual marriage is required to overcome the presumption which the law makes against acts of a criminal nature. (Clayton *v.* Waddell, 5 *Barb.*, 214; Commonwealth *v.* Littlejohn, 15 *Mass.*, 153).

II. The court erred in excluding the testimony of Catharine Coombs. The evidence of marriage between the witness and the plaintiff was merely *prima facie.* She was the best witness that could be called to speak directly upon the subject. (1 *Greenl. Ev.*, § 339; Peat's case, 2 *Lew. Cr. Cas.*, 288; Wakefield's case, *Ib.*, 279; Allen *v.* Hall, 2 *Nott & Mc.*, 114; Stevens *v.* Mops, *Cowp.*, 593; King *v.* Bromley, 6 *T. R.*, 330; Mace *v.* Cadell, 1 *Cowp.*, 232; Poultney *v.* Fairhaven, *Brayt.*, 185; Commonwealth *v.* Littlejohn, 15 *Mass.*, 413; *Phil. Ev.*, 88 *n.* 163 *and* 192).

III. The damages are so extravagant, as to indicate that the jury must have been actuated by passion, partiality, or prejudice.

*C. Schaffer*, for respondent. I. No actual marriage need be proved. (Taylor's case, 9 *Paige*, 611; Jackson *v.* Winne, 7 *Wend.*, 47; Morris *v.* Miller, 4 *Burr.*, 2057 *and* 1 *Hill*, 270; 5 *Johns.*, 196; 3 *Mass.*, 317; 10 *East.*, 285; 4 *Johns.*, 53; and see Linden *v.* Linden, published in the *New York Sun*, 27th Jan., 1851).

II. The testimony of Catharine Scherpf was properly rejected. (Babcock *v.* Booth, 2 *Hill*, 181; People *v.* Carpenter, 9 *Barb.*, 580; 1 *Greenl. Ev.*, 409, § 339; 2 *Kent. Comm.*, 178).

III. The damages are not unreasonable.

INGRAHAM, J.—The exceptions taken on the trial of this cause to the rulings as to the admission of evidence, have been abandoned, and on this argument, the counsel have only submitted two grounds of appeal as to what took place on the trial, and an objection to the damages awarded, as being excessive.

I. The first point is, that the motion to dismiss the complaint should have been granted. This was upon the ground that direct proof of the marriage was not given; and that the

act for which the defendant was sued being a criminal act, actual marriage must be proved.

After the full examination paid to this point by Judge Woodruff, I deem it unnecessary to repeat what he has so well said in regard to it, but only necessary to add our concurrence with him in the opinion, that in civil actions for this cause, actual proof of the marriage is unnecessary, and that the same may be proven by cohabitation, reputation, and the acknowledgment of the parties.

In addition, however, to this proof in this case, there is the clear admission proven of the defendant, made in the hearing of the witness Lekot, that the defendant spoke of Mrs. Scherpf as married, that she was married to Mr. Scherpf, who he said was in New York. Such an admission of marriage, in any other than a criminal prosecution, has been held sufficient evidence of marriage, even without proof of actual marriage. In Rigg v. Curgenvew, (2 *Wils.*, 395), it was said, in an action for *crim. con.*, that "if it were proven that the defendant had seriously recognized that he knew the woman was the plaintiff's wife, we think it would be evidence proper to be left to the jury, without proving the marriage."

And this has been held expressly to be sufficient in Forney v. Hallacher, (8 *Serg. & R.*, 159).

I think there can be no doubt, that under the evidence in this case, the motion to dismiss the complaint was properly denied.

II. The second objection is that the wife, when offered as a witness, was improperly excluded, and should have been received.

When she was offered as a witness, the proof of marriage had been sufficiently established to go to the jury on that question. The judge so held on the trial, by refusing the motion to dismiss the complaint, and we think his ruling was proper. If the evidence was sufficient for that purpose, surely in the absence of all proof to the contrary, the proof was sufficient to establish the marriage so far as to render the wife incompetent. The case shows that the person called as Catharine Coombs was the alleged wife of the plaintiff, and the person referred to by the witnesses as his wife. This established the identity of the person offered as a witness, with the person to

Scherpf *a.* Szadeczky.

whom the witnesses had referred, and to whom the defendant's admissions related. I am at loss to see upon what ground a wife can ever be excluded as a witness for or against her husband, if this evidence was not sufficient proof of the existence of that relation between them, for that purpose.

It is said that she should be admitted where it is to prove the invalidity of the marriage, or in other words, that the wife who in all cases is prohibited from being a witness, because the law preserves inviolate the confidential communications between husband and wife, is to be admitted as a witness only in one case, and that a case to prove the adultery of the husband and her own.

We have been referred to no case authorizing the admission of the wife in such a case as a witness. The authorities cited by the defendant do not decide any such point. In principle and upon authority, as far as any can be found applicable, the rule is the other way. Cases may be found where a witness was not admitted to prove his previous marriage with a party to a suit. (Broughton *v.* Harper, 2 *Ld. Raym.* 752). So if a woman sues as a *feme sole*, a witness cannot be called to prove that she was his wife. (Bentley *v.* Cook, *cited* 2 *T. R.*, 265), and so in a case of settlement, where a marriage had been proven between two paupers, a witness to prove his former marriage with them was properly excluded. (Rex *v.* Cliviger, 2 *T. R.*, 263).

The ruling of the court was, I think, proper, and there was no ground for admitting the alleged wife as a witness.

III. The remaining objection applies to the amount of damages. It is alleged they are excessive. From the case and all the evidence, it must be apparent that the parties are not in a situation warranting such a heavy verdict, and the recovery of anything will probably be defeated by the large amount which the jury have given. Still the cause of action is one in which it is difficult to fix any limit to the amount, one which is peculiarly within the province of the jury, and the mere amount of the damages without some other fact to establish it, would not justify us in saying that the jury were actuated by improper motives in settling it.

The judgment should be affirmed.