CATHARINE LONGENDYKE *vs.* PETER R. LONGENDYKE.

A married woman can not sue her husband, in an action for an assault and battery.

THIS was an action for an assault and battery brought by the above named respondent, as plaintiff, against the appellant, as defendant.   The battery in the complaint is alleged to have taken place on the third day of December, 1860, at the town of Saugerties, Ulster county.   The answer was a general denial, and it is also alleged that the plaintiff was the wife of the defendant, and that at the time of the occurence the parties were living together as husband and wife.   That the plaintiff at the time mentioned in the complaint was conducting herself in a very rude and indecent manner, and attempted to strike the defendant.   That the force which the defendant used was necessary to restrain the plaintiff.   The cause was referred to Seymour L. Stebbins, as sole referee, to hear and decide.   The hearing took place on the 16th day of September, 1862, and the referee found the following facts, to wit:

"*First.* That for the last thirty years, the plaintiff has been and still is, the wife of the defendant.   *Second.* That on the third day of December, 1860, at the town of Saugerties, the defendant assaulted and beat the plaintiff to her

Longendyke *v.* Longendyke.

damage one hundred dollars." His conclusion of law was, "that the plaintiff is entitled to judgment in this action against the defendant for the sum of one hundred dollars with costs." The defendant excepted to the finding of the issue, that the defendant had beaten the plaintiff to her damage of one hundred dollars, and also to the conclusion of law, that the plaintiff was entitled to a judgment of one hundred dollars and interest. Judgment having been entered upon the report of the referee, the defendant appealed to the general term, and served a case with exceptions. On the trial of the cause it was admitted that the parties were husband and wife, and the counsel for the defendant moved to dismiss the complaint upon the ground, that an action for an assault and battery could not be maintained by the wife against the husband. The referee overruled the objection, and the defendant's counsel duly excepted. A motion for a nonsuit was made at the close of the plaintiff's evidence upon the same ground, and denied. The plaintiff was also called as a witness in her own behalf, and objected to by the counsel for the defendant, upon the ground that a wife could not be a witness against the husband. The objection was overruled by the referee, and the counsel for the defendant excepted.

The defendant having appealed from the judgment, now asks for a reversal thereof.

*E. Whittaker*, for the plaintiff.

*T. R. Westbrook*, for the defendant.

*By the Court*, HOGEBOOM, J. It is conceded by counsel that by the rules of the common law husband and wife could not sue each other in a civil action. The only question therefore is whether by statute that right has been conferred. It is claimed that this has been done by laws passed in 1860 and 1862. The law of 1860, (*Laws of* 1860, *ch.* 90, § 7,)

was passed, it is obvious, mainly if not exclusively to enlarge and establish the rights of property in married women which had been conferred by the previous acts of 1848 and 1849. In furtherance of that object, section 7 declares that married women may sue and be sued in all matters relating to their property, which may be their sole and separate property or come to them from any person except their husbands ; and may bring actions to recover damages for injuries to their person or character, against any person or body corporate, which damages when so recovered shall be their sole and separate property.

The right to sue her husband in an action of assault and battery may perhaps be covered under the literal language of this section ; but I think such was not the meaning and intent of the legislature, and such should not be the construction given to the act, for the following among other reasons :

1. It is contrary not only to the rule of the common law but to the spirit and intent of the married women's acts, the object of which was to add to her property rights as a feme sole, and to distinguish her property from her husband's, and not to confer rights of action upon her, against him.

2. It is contrary to the policy of the law, and destructive of that conjugal union and tranquility, which it has always been the object of the law to guard and protect. This has been carried so far, that although the language of the code and of the law of 1847, p. 630, was, when literally construed, comprehensive enough to allow all persons, with one limited exception, to be witnesses, it was held not to allow husband and wife to be witnesses for or against each other, and such is now held to be the rule applicable to this relation, with certain exceptions. (*Erwin* v. *Smaller,* 2 *Sand.* 340. *Pillow* v. *Bushnell,* 5 *Barb.* 156. *Hasbrouck* v. *Vandervoort,* 4 *Sand.* 596. *City Bank* v. *Bangs,* 3 *Paige,* 36. *People* v. *Carpenter,* 9 *Barb.* 580. *Marsh* v. *Potter,* 30 *id.* 506. *Babbott* v. *Thomas,* 31 *id.* 277.)

Longendyke *v.* Longendyke.

3. The effect of giving so broad a construction to the act of 1860, might be to involve the husband and wife in perpetual controversy and litigation—to sow the seeds of perpetual domestic discord and broil—to produce the most discordant and conflicting interest of property between them, and to offer a bounty or temptation to the wife to seek encroachment upon her husband's property, which would not only be at war with domestic peace, but deprive her probably of those testamentary dispositions by the husband, in her favor, which he would otherwise be likely to make.

4. Under the acts of 1848 and 1849, which are quite comprehensive, the courts held that they did not remove the wife's common law disability to contract, otherwise than as respected her separate property. They therefore held her promissory notes, and executory contracts invalid. Evincing a disposition not to enlarge the acts in question beyond their most plain and obvious scope, nor to remove the disabilities of the common law, to any greater extent than was required by the plain words of the statute. (*Coon* v. *Brook*, 21 *Barb.* 546. *Dickerman* v. *Abrahams*, *id.* 551. *Bass* v. *Bean*, 16 *How. Pr. Rep.* 93. *Arnold* v. *Ringold*, *Id.* 158. *Switzer* v. *Valentine*, 4 *Duer*, 96. *Yale* v. *Dederer*, 18 *N. Y. Rep.* 265.) The act of 1860 was doubtless intended to enlarge this right to make bargains and contracts, and sections 2 and 8 of that act would appear to give unqualified power to make bargains and contracts in regard to her property; but if we follow the spirit of the previous decisions, it is very doubtful whether they would be held so far to destroy the unity and identity of husband and wife as to enable her to bargain and sell her property to her husband. I refer to this only by way of illustration, and not as intending to express any positive opinion upon the construction which ought to be given to the latter sections.

5. The act of 1862, (*Laws of* 1862, *chap.* 172,) does not materially differ from the act of 1860, or require a different construction. It repeals some sections of the act of 1860.

It confers the power to sue and be sued in somewhat broader terms than the act of 1860, (*see sec.* 7,) but not in a manner to lead to the implication that the husband was intended to be permitted to be sued by the wife for injuries to her person and character, as in an action of assault and battery, or slander. On the contrary, section 8, which provides that her bargains or contracts shall not be binding upon her husband, nor his property liable therefor, and section 5, which provides that in actions brought or defended by her, neither the husband or his property shall be liable for the costs thereof, nor the recovery therein, give strong color to the presumption that neither her bargains or contracts or actions, which the law intended to authorize, were bargains, contracts or actions with her husband.

I think the referee erred in sustaining the action; and if I am right on that point, it is unnecessary to examine the other point, already incidentally considered — whether the husband and wife were competent witnesses against each other in a civil action between them.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, September 7, 1863. *Gould, Hogeboom* and *Miller,* Justices.]