JESSIE SCHUBERT, Plaintiff, *v.* AUGUST SCHUBERT WAGON COMPANY, Defendant.

Supreme Court, Oneida County, May 20, 1927.

**Master and servant — liability of master for negligence of servant — if no liability exists against servant, master is absolved — action by wife of defendant's employee for injuries suffered in automobile accident — since wife has no cause of action against husband complaint against master must be dismissed.**

The liability of a master for the negligence of its servant is purely derivative and secondary and is based upon the liability of the servant, the person who actually committed the wrong; and if no liability exists against the servant in favor of the person injured there is no liability on the part of the master under the doctrine of *respondeat superior.*

Accordingly, the complaint in this action against the defendant corporation, employer of plaintiff's husband, to recover damages for the negligence of said husband in driving an automobile in which plaintiff was riding, on the theory of *respondeat superior*, must be dismissed, since under the settled law of this State a wife cannot maintain an action in tort against her husband.

MOTION for direction of verdict.

*James T. Cross*, for the plaintiff.

*Kernan & Kernan*, for the defendant.

CHENEY, J.   At the trial of this case defendant made a motion for a nonsuit and also for direction of a verdict in its favor. The court reserved decision upon the motions and took a special verdict from the jury.   Upon the coming in of the verdict it was stipulated in open court that the court might decide the questions of law involved after the submission of briefs and direct a general verdict in the case with the same force and effect as if the jury was still in court undischarged.

The action is to recover damages for negligence.   Plaintiff's claim is that she was injured while riding in an automobile belonging to the defendant, which was being driven by the husband of the plaintiff, who was the president and an employee of the defendant, by reason of the negligence of her husband in the operation of the car.   The following questions of fact were submitted to the jury and they by their special verdict answered them as follows: No. 1. Was the accident which resulted in injury to the plaintiff caused by the actionable negligence of August Schubert, the husband of

the plaintiff? Answer. Yes. No. 2. Was August Schubert at the time of the accident an employee or servant of the defendant? Answer. Yes. No. 3. Was August Schubert at the time of the accident engaged in the performance of the business of the defendant? Answer. Yes. No. 4. Was the plaintiff guilty of any negligence which caused or contributed to the accident? Answer. No. No. 5. What is the amount of the damages, if any, suffered by the plaintiff by reason of the injuries received by her in the accident? Answer. $1,500.

By that determination of the jury it is settled that the negligence which is relied upon as the basis of this action was the personal negligence of the husband of the plaintiff. It may be regarded as the settled law in this State that a wife cannot maintain an action of tort against her husband. (*Schultz* v. *Schultz*, 89 N. Y. 644; *Abbe* v. *Abbe*, 22 App. Div. 483; *Longendyke* v. *Longendyke*, 44 Barb. 366; *Freethy* v. *Freethy*, 42 id. 641.) This has been definitely decided to include an action for negligence. (*Perlman* v. *Brooklyn City Railroad Co.*, 117 Misc. 353; affd., 202 App. Div. 822; *Newton* v. *Weber*, 119 Misc. 240.) Consequently, if this action had been brought against the husband, it could not be maintained.

However, the action is brought against the defendant, the employer of the husband, to recover damages for the negligence of the husband, its servant, under the doctrine of *respondeat superior*, and the question to be determined is whether such an action can be maintained. The plaintiff is not helped any by section 282-e of the Highway Law (added by Laws of 1924, chap. 534, as amd. by Laws of 1926, chap. 730) which makes the owner of an automobile liable for the negligence of any person operating the same with his consent, because this accident did not take place within the State of New York, and that question was not submitted to the jury. The jury has found the facts in plaintiff's favor which would justify a verdict provided it be held that an employer may be liable under the doctrine of *respondeat superior* although the person actually guilty of the negligence and ultimately liable therefor would not be.

The liability of the master for the negligence of his servant is purely derivative and secondary, and is based upon the liability of the servant, the person who actually committed the wrong; and if no liability exists against the servant in favor of the person injured, it would seem that there should be no liability on the part of the master.

The question does not appear to have been squarely decided in this State, although it has been held that where the action was brought against the master and the servant both, that a verdict exonerating the servant and holding the master liable was incon-

sistent and could not stand. (*Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228; *Hein* v. *Sulzberger & Sons Co.*, 175 App. Div. 465, 467.) It is true that in the opinion in *Pangburn* v. *Buick Motor Co.* (*supra*) the court used this language: " If there was any negligence in the operation of the car it was that of Grounsell, and the only possible theory of liability on the part of the appellant was that it was responsible for his negligence because he was its employee and engaged in its business. If Grounsell was not negligent *and liable in this action* (italics mine) there was no conceivable basis for a recovery against the appellant; " but the particular question we are now discussing was not involved in that case and probably was not in the mind of the court when that language was written, and it cannot be given other authority than that of an *obiter dictum*.

Pollock in his work on Torts (12th ed.), 86, in discussing the liability of the master for the torts of his servant, states the rule as follows: " What constitutes negligence does not just now concern us; but it must be established that the servant is a wrongdoer, and liable to the plaintiff, before any question of the master's liability can be entertained." This rule seems to be justified by the authorities. In *New Orleans & Northeastern R. R. Co.* v. *Jopes* (142 U. S. 18), where the question was as to the liability of a railroad company for an assault committed upon a passenger, and it was claimed that the fact that the assault was justifiable so far as the employee was concerned was available to the company, the court said: " It would seem on general principles that if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity." And again: " It may be generally affirmed that if an act of an employé be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor." In *Horgan* v. *Boston Elevated R. Co.* (208 Mass. 287), where it was sought to charge the master for a false imprisonment committed by its servant, and it appeared that during the proceedings the plaintiff had consented to a certain step which under a local statute would operate as a release of liability of the person making the arrest, the court said: " If for the reasons stated the plaintiff could not prevail in a suit against the officer or the officer's fellow servant, he cannot recover against the defendant. The carrier when sued for an assault by the carrier's servant upon a passenger may prove in justification that the servant could not have been held liable, or has been released, and if the servant was not responsible in damages, the carrier also is exonerated." In *Alabama Great Southern R. Co.* v. *Ensley Transfer & S. Co.* (211

Ala. 298; 100 So. 342) the court said: " Obviously, whenever the master,, whether a corporation or an individual, is guilty of a tort through the misfeasance or willfully wrongful conduct of a servant, the servant is for the same conduct personally guilty and liable. * * * And, *vice versa,* when the conduct of the servant does not render him personally liable, it cannot impose liability upon the master under the doctrine of *respondeat superior.*"

Another development of the same principle is the holding that when the plaintiff has been defeated in an action against the one primarily liable, the servant, such judgment is a bar against the one secondarily liable, the master. (*Betor* v. *City of Albany,* 193 App. Div. 349; *Featherston* v. *Newburgh & C. Turnpike Co.,* 71 Hun, 109; *Portland Gold Mining Co.* v. *Stratton's Independence,* 158 Fed. 63.)

Another reason why the rule above enunciated should prevail rests in the fact that the one actually committing the wrong is liable over to the one secondarily liable for any damages which he has been compelled to pay to the person injured. (*Oceanic Steam Navigation Co.* v. *Compania Transatlantica Espanola,* 134 N. Y. 461; *N. Y. Consolidated R. R. Co.* v. *Massachusetts Bonding & Ins. Co.,* 193 App. Div. 438.) If a recovery was permitted against the master under circumstances where an action could not be maintained against the servant, either one of two results would follow if an action to establish such indemnity were brought. If it were held that the non-liability to respond to the person injured by the tort was a defense to the action, the master would be deprived of his indemnity from the guilty servant. If it were held that such was not a defense, the ultimate result would be that the injured person has been able to accomplish indirectly what he could not do directly, to wit, collecting damages for a tort when no legal liability therefor exists against the person actually guilty of the acts upon which it is based. Either result would do violence to settled principles of law and should not be permitted.

This is particularly true in a case such as this where the effort is to recover for a personal tort committed by a husband upon his wife. While the basis of the common-law rule that a wife could not maintain an action in personal tort against her husband is sometimes said to be in the old doctrine of the unity of husband and wife, yet the controlling reason is that to permit such an action would be contrary to sound public policy. In the leading case of *Longendyke* v. *Longendyke* (44 Barb. 366) this feature was stressed. The court said: " It is contrary to the policy of the law, and destructive of that conjugal union and tranquillity, which it has always been the object of the law to guard and protect.

\* \* \* The effect of giving so broad a construction to the act of 1860, might be to involve the husband and wife in perpetual controversy and litigation — to sow the seeds of perpetual domestic discord and broil — to produce the most discordant and conflicting interest of property between them, and to offer a bounty or temptation to the wife to seek encroachment upon her husband's property, which would not only be at war with domestic peace, but deprive her probably of those testamentary dispositions by the husband in her favor, which he would otherwise be likely to make." That public policy would be present to as great an extent if the effort was to take the husband's property indirectly as it would if the action was directly against the husband.

Both reason and precedent lead to the conclusion that if no liability exists against the servant in favor of the person injured, the master is not liable under the doctrine of *respondeat superior*.

A general verdict is, therefore, directed under the stipulation in favor of the defendant dismissing the plaintiff's complaint. An exception may be noted for the plaintiff, so that this question may properly be raised upon appeal.