THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY MORTON, Appellant.

Argued October 18, 1954; decided December 31, 1954.

*David F. Price* for appellant. I. At common law, neither spouse could commit larceny with respect to the property of the other. (*People ex rel. Felmere* v. *Rapp,* 180 Misc. 839; *People [Rossiter]* v. *Rossiter,* 173 Misc. 268; *People* v. *Mattiello,* 200 Misc. 619.) II. Since the enactment of the larceny law, which became effective January 1, 1830, no specific amendment has been enacted which has either expressly or impliedly abrogated the common-law rule that one spouse may not steal from the other. (*People* v. *Karp,* 298 N. Y. 213.) III. The purpose of section 57 of the Domestic Relations Law was to place each spouse on an equal plane as to actions by either for injuries to the person, reputation or property of the other. It was not to make either spouse responsible criminally for injury to or conversion of the property of the other (*People* v. *Shakun,* 251 N. Y. 107; *People* v. *Benc,* 288 N. Y. 318; *Schubert* v. *Schubert Wagon Co.,* 249 N. Y. 253; *Caplan* v. *Caplan,* 268 N. Y. 445; *Allen* v. *Allen,* 246 N. Y. 571; *Schultz* v. *Schultz,* 89 N. Y. 644; *Abbe* v. *Abbe,* 22 App. Div. 483; *Whitney* v. *Whitney,* 49 Barb. 319; *Wright* v. *Wright,* 54 N. Y. 437.)

*Edward S. Silver, District Attorney* (*William I. Siegel* of counsel), for respondent. I. The common-law doctrine that one spouse could not steal the property of another and thereby be guilty of larceny was universally applied. (*Reg.* v. *Kenny,* 2 Q. B. D. 307; *Rex* v. *Willis,* 168 Eng. Rep. 1309; *State* v. *Banks,* 48 Ind. 197; *State* v. *Koontz,* 124 Kan. 216, 55 A. L. R. 555; *State*

v. *Phillips*, 85 Ohio St. 317, 40 L. R. A. [N. S.] 142; *People ex rel. Troare* v. *McClelland*, 146 Misc. 545.) II. The Legislature has by express enactment abrogated the common-law rule.

DESMOND, J. This court now answers for the first time a question old in New York law. May a husband be convicted of the crime of larceny (Penal Law, § 1290) for appropriating the separate property of his wife? Put another way, the question is this: did the various Married Women's Acts enacted, revised and codified between 1848 and 1909 and now appearing as sections 50 and 51 of the Domestic Relations Law, which give married women the right to own property and to sue and be sued with respect thereto, abrogate, without any corresponding change in the larceny law, the settled common-law rule that there could be no theft by a husband of his wife's property, since she could have, at common law, no separate property? Our answer, like that of the unanimous Appellate Division, is in the affirmative. Our reasons are substantially the same as those so cogently put forward by the Appellate Division.

Actually, there were (as one of the Appellate Division opinions points out) two reasons for the common-law rule (or fiction) that there could be no such thing as a theft by husband from his wife. Those two bases, separate although shading into each other were: first, the absence at common law of any separate right of property in a married woman; and, second, " the merger of their beings in the unity of marriage " (*Schubert* v. *Schubert Wagon Co.*, 249 N. Y. 253, 255). The first of those bases, it is conceded, has no longer any existence. The real question here is as to the extent and effect of the " legal unity " theory. That latter concept survived the passage of the early " Married Women's Acts " to the extent that the New York courts refused, until section 57 of the Domestic Relations Law was amended in 1937, to change the holdings of *Schultz* v. *Schultz* (89 N. Y. 644), *Allen* v. *Allen* (246 N. Y. 571), *Schubert* v. *Schubert Wagon Co.* (249 N. Y. 253, *supra*), and *Caplan* v. *Caplan* (268 N. Y. 445), that neither spouse could sue the other for wrongful personal injuries. But the " legal unity " idea never, after the first Married Women's Acts had come into the law, prevented civil suits by a wife against her husband based on his wrongful interference with her separate property (*Wright*

v. *Wright,* 54 N. Y. 437; *Whitney* v. *Whitney,* 49 Barb. 319; *Wood* v. *Wood,* 83 N. Y. 575). The fullness of the protection to the wife's property rights thus afforded by the civil courts is illustrated by *Neilitz* v. *Neilitz* (307 N. Y. 882). It seems to us that, to make such protection efficient and complete, she should be allowed to appear as complainant against her husband when he steals her money or valuables. We are not fearful, as was the court in 1863 in *Longendyke* v. *Longendyke* (44 Barb. 366, 369), that this will " involve the husband and wife in perpetual controversy and litigation " or " sow the seeds of perpetual discord and broil ". The authorization of civil suits by spouse against spouse brought no such a rash of litigation. The good sense and careful judgment of prosecutors and police, judges and juries, must be relied on not to turn into larcenies petty disagreements over personal property. In these, as in all criminal cases, guilt, including the element of intent, must be proven beyond a reasonable doubt, taking into account all relevant circumstances.

As distinguished from what may be called policy considerations, appellant argues from statutory construction. New York's statutory definition of larceny, he points out, has not changed materially since 1830 (compare Rev. Stat. of N. Y. [1829] [part IV, ch. I, tit. III, art. V] with Penal Code, § 528 [1881], and present Penal Law, § 1290). He, therefore, argues that, since the early statutes did not cover misappropriation of a wife's property by her husband, and since the Married Women's Acts said nothing about larceny, the criminal law in this connection, as distinguished from the civil law of property rights, remains unchanged. He asks us to draw the conclusion that there is no statute making such misappropriation a crime and that such a result cannot, under the general rule (see *People* v. *Benc,* 288 N. Y. 318, 323), be brought about by the courts, but requires legislative action. Agreeing to the premises, we reject the conclusion. The larceny statutes, old and new, penalize, in varying verbiage, the wrongful taking of the property of another. Before the Married Women's Acts, the existing larceny laws were inapplicable to a husband's taking of his wife's chattels, but only because such chattels did not belong to " another " but, under the old fictions, belonged to the husband himself. So, when the wife became " another ", the larceny statutes without

necessity of amendment covered her losses as well as those of any other lawful owner of property. We cannot, at this late date, discover the actual legislative intent, if any, nor can we refuse to apply an old plain statute to a new plain fact within the statute's coverage.

LEWIS, Ch. J., CONWAY, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

Order affirmed.